Number 06-1528 Gonzales & Gonzales v. Department of Homeland Security Good morning, your honors. May it please the court, my name is Gary Nye. I'm here representing Gonzales & Gonzales Bonds & Insurance Agency and American Charity Company. Now, let me ask you a question I have in this case. This is an appeal from a transfer order. That's correct. And we have to be sure that in such a case that the transferee court, in this case the Court of Federal Claims, has jurisdiction, correct? That's correct. Now, the government says that, among other things, that in its brief that the transfer here is improper because the Court of Federal Claims does not have jurisdiction because this is not a claim for money damages, alright? Okay. Now, you said in your brief that that's a point that wasn't raised below, correct? That's correct. And, but the point is it's jurisdictional, so we have to consider it. Whether it's been raised or not, we have to address it as a jurisdictional issue. What I'd like you to do now is explain, give your views as to why this is a claim for money damages because we have to have, the Court of Federal Claims has to have jurisdiction. That's correct. Well, there's two issues that I'd like to address. First of all, and I understand that it wasn't raised below, and in the order itself there is no reference whatsoever to this being a cancellation of debt or a money damage argument. That issue was never briefed on this particular motion. And the reason that's important, by the way, it was briefed two other times in the district court on prior motions to dismiss, and on each occasion the trial for the district court held that this was, seeking cancellation of debt was a form of money damages and was an appropriate remedy under the Tucker Act, and it cited Brazos and it cited the Oprah case, the two only cases on trial. But more importantly, the thing that's a little bit problematic about this, from a procedural standpoint, is had the government appealed that motion to dismiss that they brought based upon this cancellation of debt argument, that appeal would have gone to the Ninth Circuit. It would not have been before this court. That was a motion to dismiss which is properly appealable as an interlocutory order before the Ninth Circuit. The reason we're in this court is because it was a motion to transfer. This court has jurisdiction to entertain appeals on a motion to transfer to this court. Correct. No, I understand that. Everything you said is correct. The question is, given where we are, we have to be satisfied, and I'm obviously just speaking for myself, my colleagues on the panel will articulate their views if they feel appropriate, but we have to be satisfied that jurisdiction lies in the court of federal claims. And the government has said jurisdiction does not lie there because this is not a proper Tucker Act suit. Your action does not represent a claim for money damages. Now, what is your answer to that? I'm not certain if that's what the government's saying, but I'll allow them to address that. I think what the government's saying is that it doesn't belong in – it belongs in this court because the claim is in excess of $10,000. I don't know. Our case is a little Tucker Act claim. It's not our jurisdiction that Judge Schall is trying to point to. Our jurisdiction is over the transfer order, which is proper. Fair. What we're trying to find out is whether or not when the court transfers the claim to the court of claims, is there in fact jurisdiction in the court of federal claims over that particular claim? I understand that, and I also understand – Those are the money claims that have to be tried in the court of federal claims. Now, is this a money claim? Is this a claim for money? There's two issues to that question. One, I'll first address as to Gonzales and Gonzales. It is a money claim. How is it a money claim? It is a money claim because we are seeking to cancel debt that the federal government is claiming that we owe to them. We are alleging it's a money claim. That Gonzales owes to them? Yes. According to the federal government, Gonzales and Gonzales owes them by virtue of a breach of… I thought the surety owed the money. Well, surety owes the money, as does the insurance agent. It's a joint several contract. Both clients owe money. I wish I could say that it was not a money suit, in which case we wouldn't be here. It is a money suit, but we brought it in district court under the little Tucker Act because each bond is a separate obligation with less than $10,000. The reason I said I wanted to address it separately… Now, you have not paid any of the money due on the bond? Well, we've certainly tendered and made the offer to make the payment. They haven't accepted the money because, you know, under my estimation, although it's not the record, they don't want us to be able to argue that we've paid the money, we're trying to get it back. We've tendered the money to make the claim. There is a debt outstanding where the government is seeking to collect that money from us because they believe they have a final debt in favor of the government. We still believe it's a monetary claim. We think it properly belongs in the district court because it is a little Tucker Act claim. The amount in controversy of each separate bond that we've sued under is for $10,000 or less. Let me ask you, where does this, in the process, normally what happens here is that the government comes after someone in your client's position and says the alien has defaulted, has disappeared, or whatever, and they come after your client to collect the bond, correct? Correct. And is that done in an internal, as I understand, it's an internal process? It starts internally, that's correct. Where does it sit now in terms of that process? Where it sits now is the Department of Homeland Security has breached approximately 193, and it's probably climbing as we speak, they've breached approximately 193 bonds. Well, that's your position. No, no, I'm just asking. But what's the other side of it? They made a demand for the money? Yes. For all of these? That's correct. They have made a demand for the money. And you have not paid? And we have not paid because we think we have solid defenses to non-payment. We don't believe that that debt that they've created in favor of themselves is owed. They've made a demand, Mr. Nye, in the normal administrative process, correct? Correct. Okay, so that's where the administrative system is ongoing, right? I would say the administrative system is complete. They've made the demand. We chose not, for reasons that I don't think were before this court, we chose not to exercise our administrative remedy, which is an available appeal. We believe the government has consistently taken positions that are just wrong. So what the government has to do now… Don't you have to exhaust your administrative remedies first before you can get into court? Again, two issues. In the context of bond breach appeals, we believe it is a voluntary method. It is a discretionary method that you can exhaust. One exception, of course, is when it's futile. The government has already made specific rulings on many of the precise legal issues that we are asserting in this lawsuit. Again… Are those decisions made administratively? Yes. There have been written decisions on precisely the issues that are in our lawsuit that have ruled against the Sherry Company and my client in particular. There's no reason that we need to keep going back to get the same punishment each time. That's why we've gone to the district court to ask for a resolution, because we just believe, frankly, that the government's wrong. Again, on the administrative remedy issue, that was briefed. The district court specifically says that she found that to be not persuasive for reasons that we cite in our briefs. It has nothing to do with the transfer order here. You've made the offer to make payments on all the bonds to the government? That's correct. We've sent them letters saying, we're prepared to make payment. We want to reserve our rights to bring our case in the district court, because we don't believe payments do, but we're prepared to make payment. The government responded, and again, I apologize because that is not in the record, because it was just never brought before the district court, but I believe the council will acknowledge this. They wrote us back a letter saying it's not appropriate for you to do this in rigged jurisdiction, that you're just trying to create jurisdiction by paying and getting the money back. Well, what you're saying the government has to do is come after you in court to collect the money, correct? If they wanted to do that, that was certainly an option. I did not want my client – my client did not want to have this massive debt sitting out there to the federal government, so we took an initiative. We went in first to explain – to ask the court to cancel that debt, because we don't think we owe money. So your argument is that this – that the government says your client owes the government X dollars, okay? Correct. And you're saying that you want a judgment that, in fact, your client does not owe the government anything, correct? We want a judgment canceling that debt. That's correct. And you're saying that that is a claim for money damages that's properly cognizable under the Tucker Act or the Little Tucker Act. That's correct. It is a – and two specific courts have held it, the Brasos court and the Okra court. And the judge said it when – at the district court level when this was addressed two times earlier, what would be the net effect? She said what purpose would that serve where you're making – you want them to basically have to pay the money and then sue you to get it back. That would exalt form over substance. I'm not going to require it. And again, we wouldn't be in this position if the government had sued us to get the money or if the government would have accepted our payment and allowed them to sue – allowed us to sue them in district court to get this money back. Well, if you're trying to prevent the government from collecting the funds, why don't you bring an APA after them to join the government? I'm not trying to prevent the government from collecting the funds. They're more than able to, and in fact they have asserted a counterclaim against us. By the way, and that's an excellent question, if the government had chosen to just sue us, they would have been required to bring that suit in the district court. There's no doubt about that. The government could not have sued us in the court of claims. They would be suing us for money, and original jurisdiction lies in the district court under – I think it's 1345. They could not have sued us in the court of claims. The only reason we're here is because we chose to sue first in the district court, and they said that our claim is for money. Our claim is for in excess of $10,000, which is why… Right now, though, Mr. Connolly, the government isn't holding any money of yours, is it? We've paid 11 specific bonds out of the 190-plus, and the government is holding 11 of those bonds. No, no, but what's in dispute? Yes, they are holding some of our money, but in fairness, we tried to pay all of them. We've only paid 11 bonds that they actually accepted the money. So theoretically, we are suing them on 11 different bonds. No, but I mean you're asking for a debt cancellation. You're not saying give me money back. Well, again, after the court ruled on the debt cancellation, we did make, in fact, 11 separate payments on 11 different bonds, all less than $10,000. So on those 11 cases… But you're not trying to get that back. We're trying to get that money back, absolutely. Have you amended your complaint? Pardon? Have you amended your complaint to seek the damage? No, Your Honor, we haven't. That's not in the complaint. Well, that's fine. The reason we haven't had to do that is because the district court specifically told us that seeking cancellation of debt… And again, it's not the appeal before this court. On two separate occasions, Mr. Nye, your client can bring a cause of action seeking cancellation of the debt under the Little Tucker Act, under the authority of Rossos and Oakbrook. And in fact, we've done that. So if I could just briefly, because I see I'm far into my rebuttal time, if I could briefly talk about American Charity Company, which is truly an anomaly here. American Charity Company is not a plaintiff to this action. That's the charity company Judge Archer referred to a minute ago. Gonzales and Gonzales is the plaintiff in the action. They initiated the case. American Charity Company was only brought into this case as a counterclaim when the government, in turn, filed a counterclaim against Gonzales and Gonzales and American Charity Company. Clearly, the transfer report, the court of claims, does not have any jurisdiction over American Charity Company. The only authority they have to file a counterclaim is against the plaintiff who initiated the case, not against a brand new party to the proceedings. If the government wants to sue American Charity Company, they have to do so by initiating an action in the United States District Court. They didn't do that. This court is without jurisdiction over American Charity. We think they're without jurisdiction over Gonzales and Gonzales. And I would submit the balance of my time to the court. Well, they filed their counterclaim while you were still in the district court, did they not? They did. OK. And that has been transferred as well? That's correct. And the government had raised in their brief what we didn't object when they brought in American Charity as a counterclaim while in the district court. And, of course, the reason we didn't object is because bringing a counterclaim against American Charity in the district court is perfectly within the acceptable rules. They have the absolute right in the district court to bring a claim against American Charity Company for money damages. And that's what they did. Thank you, Mr. Nye. We'll restore your rebuttal because you had a number of questions from the court. And we'll hear from the government now. Ms. Hancock? Good morning, Your Honors. May it please the Court, Catherine Hancock from the Department of Justice on behalf of the FLE. Here the plaintiff is seeking to cancel debt. It is seeking specific performance of the contracts or, in essence, declaratory and injunctive relief that the bonds must be canceled and the debt cannot be collected. There is a set administrative procedure, though, for appealing administrative determinations of breach, which Gonzales and Gonzales could avail itself of here but chose not to. And that administrative breach determination could then be reviewed in the district court under an APA. Where are those procedures set out? Those procedures are regulations. I believe it's 8 CFR 103.6E talks about breach of a bond. And it talks about a final determination that a bond has been breached creates a claim in favor of the United States. So you're saying, Ms. Hancock, that if in a situation like this when the person has not showed up to be sent out of the country and the government goes after the surety for the bond, there is a procedure. What happens? The government says you owe us $10,000. The government makes an administrative determination of whether there's been substantial compliance with the bond, in which case they cancel it, or whether there's been a substantial violation and the bond has been breached. They make a demand for payment and then inform the surety or the cooperative board that they have 30 days to file an administrative appeal. And if they pay, it's over. If they file the appeal and it is affirmed or they don't file within the 30 days, then that becomes a final agency determination of breach. Well, as I understand it, Mr. Nye said that it would be futile to pursue the administrative proceedings because they've all had, in other cases, ruled against them. Well, but they also never sought review in the district court of those bonds. They have unveiled themselves. They haven't filed an APA suit in the district court? No, not challenging the agency's breach determination in the district court. They did make administrative appeals of, I believe, four of the bonds here, but then did not pursue that any further. But since they've been ruled against, do they have to continue to go through the administrative process? Can't they go directly into... Well, that would be an option. Didn't they do that and you moved to dismiss in the district court? Well, the only reason we moved to dismiss here early on when they made an APA claim was it wasn't properly pled. They were pleading it as a contract action, and we said if it's a contract action, then it's not APA jurisdiction. If they brought an APA suit, although we might argue it fails to exhaust remedies, we believe there is APA jurisdiction to challenge the agency's final breach determinations. Is there an APA suit that would be brought for injunctive relief against the government from attempting to collect on the bonds? I'm not aware of any that has been done that way, Your Honor. I think what the APA review would be a record review of the breach determination, and if they determined that the breach determination was improper, then the government would be forced to cancel the bond and couldn't collect on the debt. So the net effect would be the same, Your Honor, as injunctive relief. Are you saying, then, that they should have exhausted their administrative remedies completely on every single bond before they brought the action in the district court? Yes, Your Honor, we would argue that, that they should have exhausted remedies. Did you argue it? We did argue exhaustion for the district court when they had originally alleged an APA suit. They then amended their complaint to eliminate APA jurisdiction, any reliance on the APA, and brought this as a tougher action. But you brought it on the basis that the APA would not apply because it would bring a contract action. When they had relied on the APA in the early complaints, we stated that they hadn't provided any basis for subject matter jurisdiction, but that if there had been, in any event, they had failed to exhaust remedies under the APA. I'd like to address... I just want to make sure I understand this. So, in other words, they got a final determination of breach? Yes. From, in the internal process, correct? That's correct, because they didn't, on most of them, they didn't appeal. And their option at that point was to then file an action in district court to challenge that determination, correct? That's correct, Your Honor. Now, assuming, has the time for doing that run, or could they still do it? I believe they could still do it under a six-year statute of limitation on the APA. I believe there's still time. Now, assume what we have the situation in is that we're sitting there, the government says you've breached the bond, but the government hasn't gotten its money yet. Right. Is the government's recourse, if it wants to collect the money, to then go into district court and sue the surety? That would be one option, Your Honor, but we have a lot of options on how we choose to collect debt under the Federal Debt Collection Act. And, in fact, one option we often do is refer the debt to the Treasury, Department of the Treasury, who may then go after the surety and try to decertify them. And there may be a settlement then. So there are lots of options we have on how we go to collect the debt. It wouldn't necessarily be that we'd go into district court to enforce the debt. In this case, has any of that been undertaken? No, this suit came before we had a chance to go to collect the debt, and so we haven't yet. Was there an offer to pay all of the bonds made by Gonzalez and Gonzalez? They made an offer to pay some of the bonds under protest, and early on they did, in fact, pay some. All that money was returned, which was in the district court record, so there is no money that we are holding that they have paid us. That's the $80,000. That was returned. What do you consider the proper basis of their suit in the district court? This suit, Your Honor? Well, they've gone through about three iterations of their suit, as I understand it. One of them was APA, and declaratory judgment, I guess, and the TECRA Act. And you've opposed all three of them, as I understand it. You're correct. They don't meet any of them? They haven't properly pled the complaint yet. Although they started out with APA jurisdiction, they identified no basis for subject matter jurisdiction, and then they amended that complaint to dismiss reliance on the APA and then tried to state a claim under the TECRA Act. But as we argued to the district court, we don't believe there's jurisdiction under the TECRA Act because this is really an action for specific performance or declaratory and injunctive relief. They can bring an action under the APA if they properly plead it, but so far they haven't done that. Did you move to transfer to the court of claims? We moved to dismiss or, in the alternative, to transfer because the court— But you don't believe it's a TECRA Act case, as I understand it. No, we made that clear to the district court, but we had had several motions to dismiss were not granted, and so we moved to dismiss again or, in the alternative, to transfer. But we believe, again, because the transfer order is based on two jurisdictional determinations, both that the district court lacked jurisdiction and that the court of federal claims would have jurisdiction, we believe both of those jurisdictional questions have to be decided by this court to no vote. Ms. Sankoff, are you familiar with our recent decision, suburban mortgage? Yes, Your Honor. How does that apply to this particular— I don't think directly here since we're not—I don't think we're deciding between the APA and the TECRA Act because they haven't pled an APA case here. But in any case here, I think under the adequate remedy discussion in suburban mortgage about the TECRA Act here, based on plaintiff's complaint that TECRA Act would not provide an adequate remedy because even if plaintiff is correct that the United States violated its contractual obligations under the contract, there still would not be a right to seek money from the United States. There would be no money coming from the United States Treasury because it is the debt they owe to us, not any money we owe to them. How do you distinguish the Brazos case? Brazos involved prepayment of money from a utility, and the question was whether the money that had been paid would be paid against—offset against another debt or whether the government had to directly return it back. Either one of those would have involved a payment from the government, either to pay directly to the plaintiff or paid against another debt the plaintiff owed. So either way, it would have involved money coming from the government. That's quite different from this situation, isn't it? That's correct because under no circumstances would the government here be paying any money to a plaintiff. Hypothetically, if they had offered to make the payments and the government refused, how does that play into the picture of the jurisdictional aspects of the court of federal claims? I don't think here it would have made any difference, again, because what they are seeking is really declaratory injunctive relief or specific performance to cancel debt. And if they offer to make payment under protest, again, it's not involving any return of money by the government. And certainly under this court's cases of illegal exaction theory, that's where a statute contemplates the relief that the government would be forced to repay money. Here under the contract, there's no such contemplation that the government would ever be paying money on these contracts. If the court has no further questions, we would— Thank you, Ms. Hancock. I ask the court to vacate the transfer order and remand with an order to dismiss. Mr. Knott, as I said, you have your full five minutes on the phone. Thank you, Your Honor. Getting to what Ms. Hancock has asked for as her prayer is really what I'd like to focus on. She asked the court to vacate the order of transfer and remand with an order to dismiss. That is an issue that would be for the Ninth Circuit to decide whether or not they're going to dismiss that claim. The issue before this court— No, no, no, no. First of all, we would vacate the transfer order, if she's correct. We'd vacate the transfer order because it is not a Tucker Act case and direct the dismissal, because the court wouldn't have jurisdiction. Let's look at this procedurally about how it actually got here. The government raised these issues twice in their motions to dismiss. They raised two different times that we're seeking cancellation of debt and not money damages. The district court specifically stated on two different occasions that we have properly stated a cause of action of relief under the Tucker Act. The government did not appeal that order. If they had appealed a motion to dismiss— I understand what you're saying, Mr. Knott. You're talking about what didn't happen. Right. I mean, and I understand you are, but respectfully, we have to deal with the situation that's presented to us. Right. We're presented with an appeal of a transfer order. We have jurisdiction over that. And if we were to conclude that this is not a claim for money damages under either the Tucker Act or the Little Tucker Act, I think Ms. Hancock is correct, if we were to reach that conclusion, that the correct result would be to vacate the order and direct a dismissal, because the district court doesn't have jurisdiction. And, again, I hate to ask the panel questions, but if you vacate the transfer order because this court doesn't have jurisdiction, well, then— No, no, no, no. We don't—that's not it. We would be vacating—we have jurisdiction to decide, and if we vacate—if all we did was vacate the transfer order, you would have sitting before the district court a suit over which it doesn't have jurisdiction. Okay, but isn't that for the district court—if all you did was—isn't that for the district court and its appellate division to decide whether or not they have jurisdiction? The district court has clearly made a ruling— But it doesn't have jurisdiction. Well— The district court made the ruling, and if, in fact, we were to conclude that's wrong, that's the end of it. Mr. Nye, if you brought an action under the APA for injunctive relief in an attempt to cancel a debt that would be owed to the government, the district court would have jurisdiction over that action, properly pled within the statute of limitations, and if it was denied, then you'd have an appeal right to the Ninth Circuit. Now, the—have you made that plea—have you pled that for injunctive relief to prevent the government from collecting on the debt? You know, you get into the issue of a right without a remedy, one of our first— No, I'm not getting into that issue. I'm asking you a question. Yeah. Have you pled that particular cause of action? After we pled an administrative procedure against their failure to cancel various bonds, the government responded that the Administrative Procedure Act does not provide an independent basis of jurisdiction for district court jurisdiction at that point. That's when we came up with— Did the district court agree with that? They did. As a matter of fact, they issued an opinion, and I'm not sure if it's in the joint appendix because it was—I didn't believe it was properly before this court. The district court found that the Administrative Procedure Act on its own was not an independent basis, that there has to be some other basis to support a waiver of sovereign immunity, and that's when we asserted in our next cause of action, the Tucker Act. The APA waived sovereign immunity. There's a waiver of sovereign immunity under the APA. Right, but there had to be— Properly pled— There was a subject matter jurisdiction. There had to be an independent basis of subject matter jurisdiction. The APA alone was not enough to get into district court, the court they said in this particular case. And I don't believe that it's part of the joint appendix, again, because it wasn't part of this particular appeal. Well, the APA would provide you with the relief that you're seeking under proper pleadings with respect to the cancellation of the debt. You would be requesting the government to take a particular action, and the court could have ordered the government to do that. That is not what the district— If it's proven. That is not what the district court said. The district court said that the APA on its own does not provide a sufficient— You did not appeal that. That first district court decision. Correct, but we instead filed an amended claim. As a matter of fact, it was at the court's suggestion that the court said there could be an independent basis under the Little Tucker Act. So talking about being led down a path, the district court says it's not an independent basis, but there might be under the Little Tucker Act. We went ahead and now proceeded under the Little Tucker Act, and now we've been transferred here on the aggregation issue, which is an issue we haven't even discussed today. The court transferred this case because they thought, under the aggregation issue, that the amount of controversy— But the aggregation issue, which is discussed in the briefs, is completely moot if there's not a proper money damages claim. That's correct. That's correct. Do you have any questions? Thank you, Mr. Nye. Thank you. The case is submitted.